MARSHALL ICE & ELECTRIC COMPANY *v.* FITZHUGH.

4-4897

Opinion delivered January 17, 1938.

*W. F. Reeves,* for appellants.
*John C. Ashley,* for appellees.

SMITH, J. This appeal is from a judgment awarding damages to appellee, who sued in his own right and as next friend and father of his minor son, for injuries sustained by the son as the result of a collision between

a truck which the son was driving and another truck driven by an alleged employee of appellant, a domestic corporation.

The question of the sufficiency of the service is raised, but may be disposed of by saying that the appellant corporation filed an answer containing a general denial of all the allegations of the complaint. It requested permission to withdraw this answer with leave to file a motion to quash the service, and the action of the court in overruling this motion is assigned as error.

It appears, however, that a motion to quash was filed, upon which testimony was heard on March 23, at which time, before any ruling had been made by the court, it was agreed that the cause might be set down for trial on May 27, an adjourned day of the term. The order of the court granting the continuance and setting the case for trial recites: ". . . to which date this cause is continued and defendants abandon all rights under their motion to quash service in filing their answer and continuing said cause to the 27th day of May, 1937." When the adjourned day arrived the court refused, at that time, to permit the withdrawal of the answer. There was no error in this ruling. Having voluntarily entered its appearance, upon an agreement to do so, in consideration of a continuance, the appellant corporation could not be heard thereafter to complain of the service of process.

No complaint is made of the instructions under which the cause was submitted to the jury. It is undisputed that Hugh Jennings, a defendant in the cause, was an employee of the corporation, and was driving one of its trucks at the time of the collision; but it is insisted that Jennings was not then engaged in the pursuit of his employment, but was upon a mission having no relation to his employment. The principal question in the case is whether the testimony is sufficient to support the verdict of the jury against the corporation based upon the finding that Jennings was pursuing his employment when the collision occurred.

The appellant corporation operated a plant in Marshall, Arkansas, used in generating and distributing electrical power and in the manufacture and sale of ice in

and around Marshall. Jennings had charge of this plant from the hours of 12 o'clock noon to 12 o'clock midnight. The president, officers and stockholders of appellant corporation are the same as those of the Calico Rock Ice & Electric Company, a corporation operating a smiliar plant in Calico Rock. It was not uncommon to carry ice by truck from one plant to the other as the demands of trade required, or when both plants were not being operated.

This service was usually performed by one Watts, an employee of the corporation, although on occasions it was performed by Jennings. At the time of the collision the truck was transporting no ice or other commodity. In addition to being the manager of the plant in Marshall, Jennings was the mayor of the town of Marshall, and he testified that on the day and at the time of the collision he was on his way to Calico Rock to get a pump to be used in testing a well which the town of Marshall was installing, and that this mission had no relation to or connection with his employment by the corporation. The insistence is that the testimony is insufficient to support the contrary finding.

At the trial from which this appeal comes Jennings was cross-examined touching the testimony which he had given on the preliminary hearing above referred to upon the motion to quash the service, at which time he stated that he was going to Calico Rock when the collision occurred to see H. W. Wright, the president of both corporations. He had been questioned as follows: "Q. What were you going over there for? A. To see him (Wright) on some business. Q. Connected with your plant? A. Yes, sir." This testimony was objected to upon the ground that it was irrelevant and immaterial upon the issue there involved, to-wit: that of quashing the service, and that the witness had not intended this answer to refer to the plant at Marshall. The testimony may not have been relevant to that issue, but proof thereof was competent to contradict the testimony of Jennings at the trial from which this appeal comes to the effect that he was on a mission having no relation to his employment when the collision occurred. Section 5197 of Pope's Digest

expressly provides that "A witness may be impeached by the party against whom he is produced, by contradictory evidence by showing that he has made statements different from his present testimony." The relevancy of the testimony to the point there in issue is not determinative of its competency when later offered by way of impeachment. Statements contradicting the testimony at the trial, made at any time or place, would be competent. Jennings had the right to explain, as he did do, that if he made this statement he had not understood the question. The effect and weight to be given this admission, and the explanation thereof, were questions for the jury.

As has been said, Jennings was a party defendant, and the judgment pronounced upon the verdict of the jury was against him as well as against his employer.

A similar question was presented and decided adversely to appellants' contention in the case of *Mullins* v. *Ritchie Grocer Co.,* 183 Ark. 218, 35 S. W. 2d 1010. In that case, as in this, it was insisted that the employee, in driving his employer's car, was not acting within the scope of his employment, and it was there said that if this were true no liability attached to the employer by reason of the employee's negligence; but, upon the question whether the servant was in fact in pursuit of his employment, it was said (to quote a headnote in that case) that "The universal test of the master's liability for his servant's act is whether there was authority, express or implied, for doing the act."

In that case proof was made of certain statements of the employee showing that he was acting within the scope of his employment. In answering an objection to their competency, Chief Justice HART said: "It is true that it is well settled that the fact of agency cannot be established by the declarations of the agent, but this was not the purpose of the testimony. The fact of agency had already been established by evidence which was not attempted to be contradicted. The offered evidence was for the purpose of showing that Lewis was acting in the furtherance of his master's business or in the course of his employment as traveling salesman in a place where

his duty called him, and the evidence was competent for that purpose."

Appellee's case does not rest solely upon the proof of this admission. The testimony was otherwise sufficient to prove the existence of the relation of employer and employee when the collision occurred. It is to the following effect: Wright, the president of both companies, resided in Calico Rock, and the bank account of appellant corporation was carried there for the reason that there was no bank in Marshall. Checks against the appellant corporation's account were drawn in Calico Rock. Bills due it were collected in Marshall, and these collections were carried, usually about the 1st of the month, to Calico Rock for deposit there, either by the president of the company or by an employee at Marshall. The certificate issued by the State Utilities Commission shows the home office of appellant corporation to be at Calico Rock. Jennings and another employee had charge of the collections at Marshall, and there was testimony to the effect that, in explaining why he was driving appellant's truck to Calico Rock, Jennings had said that "* * * he was going over there to take the payroll to Mr. Wright." Wright admitted that subsequent to the collision, but not prior thereto, Jennings, at his direction, had brought the collections for the current month to Calico Rock for deposit. Collections were usually made on and near the 1st of the month, and the collision occurred on the 6th day of the month, and the jury may have fairly inferred that they would be carried to Calico Rock about this time, especially as Jennings' testimony in regard to his mission is not altogether convincing. The town well in Marshall was not then ready to be tested, and Jennings did not return with the pump, or any part of it, and mere inquiry concerning the pump could have been made either by letter or by telephone.

In the case of *Mullins* v. *Ritchie Grocer Co., supra,* Chief Justice HART also said: "In a casenote to 42 A. L. R. at page 919, it is stated that proof that the automobile causing the damage belonged to the defendant, and was being operated at the time of the injury by an employee of the defendant, creates a reasonable presumption that

the driver was acting within the scope of his employment or in the course of his master's business. This presumption, however, is one of fact, and may be defeated or overcome by testimony tending to contradict it. Our own court adopted this rule in the case of *Terry Dairy Co.* v. *Parker,* 144 Ark. 401, 223 S. W. 6.''

We think the testimony above recited supports the deduction evidently made by the jury that Jennings was driving the truck in pursuit of his employment, and we cannot say as a matter of law, although the jury might have found as a matter of fact that the testimony to the contrary had overcome any presumption to that effect.

The sufficiency of the testimony to support the finding that the negligence of Jennings caused the collision is not questioned, nor is it seriously insisted that the verdict is so excessive that it may not be permitted to stand. The testimony abundantly supports the verdict in both these respects.

No error appearing, the judgment must be affirmed, and it is so ordered.