Ford & Son Sanitary Company v. Ransom.

4-8519                                      210 S. W. 2d 508

Opinion delivered April 26, 1948.

*Richard W. Hobbs,* for appellant.

*David B. Whittington* and *McMath & Schoenfeld,* for appellee.

ED. F. McFADDIN, Justice. Ford & Son Sanitary Company (a partnership composed of Reuben and George Ford) was engaged in hauling garbage in Hot Springs, and in that business operated several large trucks. The truck concerned in this case had a metal body several feet high, and was seven feet, two inches in width. At the rear of the vehicle there were swinging doors or tail gates two feet high. About 3:30 p. m. on May 26, 1947, the appellee, Mrs. Ransom, was standing in the street near the curb on Park Avenue in Hot Springs, and was struck by the swinging door or tail gate of the said gar-

bage truck owned by the appellants. The truck was being driven on Park Avenue by Henry Johnson, one of the regular drivers, and he was accompanied by a fellow-employee named Ivy Rainier. Mrs. Ransom recovered judgment against Ford & Son Sanitary Company, and the partners, who by this appeal challenge the said judgment.

The motion for new trial contains only one assignment, which reads: "The verdict and judgment is contrary to the law and the evidence, for the reason that there was no evidence introduced to show that the defendant Henry Johnson was acting within the scope of his employment and that there was substantial and uncontradicted evidence introduced to show that the defendant Henry Johnson was engaged outside the scope of his employment and purely on business of his own and for that of one other than his employers at the time the plaintiff, Mayoma Ransom, sustained the injuries complained of in the complaint filed in this cause."

Appellant thus states the issue on this appeal: "The sole question involved in this appeal is whether or not there was sufficient evidence introduced during the course of the trial for the jury to find that the alleged negligent act of Henry Johnson was done while acting within the scope of his employment and for the benefit of the appellants."

In the case at bar the appellant company's truck was being driven by one of its regular employees during regular business hours. In the case of *Mullins* v. *Ritchie Grocer Company*, 183 Ark. 218, 35 S. W. 2d 1010, Chief Justice HART, speaking for this court, said:

"In a case-note to 42 A. L. R. at page 919, it is stated that proof that the automobile causing the damage belonged to the defendant, and was being operated at the time of the injury by an employee of the defendant, creates a reasonable presumption that the driver was acting within the scope of his employment or in the course of his master's business. This presumption, however, is one of fact, and may be defeated or overcome by testi-

mony tending to contradict it. Our own court adopted this rule in the case of *Terry Dairy Co.* v. *Parker,* 144 Ark. 401, 223 S. W. 6. In this connection, it may be stated that the phrase 'in the course or scope of his employment or authority,' when used relative to the duties of the servant or employee, in cases of this sort, means while engaged in the service of his master or while about his master's business.

"The doctrine is settled in this State that, if the automobile causing the accident belongs to the defendant and is being operated at the time of the accident by one of the regular employees of the defendant, there is a reasonable inference that at such time he was acting within the scope of his employment and in the furtherance of his master's business. The inference or presumption of fact, however may be rebutted or overcome by evidence adduced by the defendant during the trial. Where the evidence on this point is contradictory, the question is one for the jury. Where the facts are undisputed and uncontradicted, it becomes a question for the court. *Healey* v. *Cockrill,* 133 Ark. 327, 202 S. W. 229, L. R. A. 1918D, 115; *Bizzell* v. *Hamiter,* 168 Ark. 476, 270 S. W. 602; and *Hunter* v. *First State Bank of Morrilton,* 181 Ark. 907, 28 S. W. 2d 712.'"[1]

Applying the rule announced in the foregoing case to the case at bar, this is the picture: when the plaintiff showed that the truck which inflicted the injury was owned by the defendant company, and was at that time being driven by the said defendant company's regular employee, then such proof raised a temporary presumption that the employee was in the scope of his employ-

[1] The case of *Mullins* v. *Ritchie Grocer Co.,* 183 Ark. 475, 36 S. W. 2d 406, is a landmark in our jurisprudence and has been cited with approval many times. Some of the subsequent cases are: *Casteel* v. *Yantis-Harper Co.,* 183 Ark. 475, 36 S. W. 2d 406; *Rex Oil Corp.* v. *Crank,* 183 Ark. 819, 38 S. W. 2d 1093; *Marshall Ice Co.* v. *Fitzhugh,* 195 Ark. 395, 112 S. W. 2d 420; *Ball* v. *Hail,* 196 Ark. 491, 118 S. W. 2d 668; *Brooks* v. *Bale Chevrolet Co.,* 198 Ark. 17, 127 S. W. 2d 1935; *Lion Oil Co.* v. *Smith,* 199 Ark. 397, 133 S. W. 2d 895; *Fooks* v. *Williams,* 205 Ark. 119, 168 S. W. 2d 193. The general rule as stated in 5 Am. Juris. 842, 871, is in accord with the rule stated by this court in the Mullins case. See, also, annotations in 74 A. L. R. 951, 965; 95 A. L. R. 878; 107 A. L. R. 419, 435.

ment. The defendant company, to avoid liability, was then obliged to introduce substantial proof directed to the negation of scope of employment. When the defendant company introduced such proof, the presumption (arising from ownership and driving of the vehicle) had served its purpose, and disappeared: so that if—independent of such presumption—there was no evidence to dispute the defendant's proof, and if such proof contained no substantial contradictions in itself, then there would have been no evidence to take the case to the jury on the "scope of employment" theory.[2] But if—independent of the presumption—the defendants' proof was substantially contradicted by the plaintiff's proof or by inconsistencies in the defendants' own proof, then the issue of scope of employment would be for the jury.[3]

With the foregoing understanding, we proceed to review the defendants' (appellants') proof on the negation of scope of employment, and then to discuss the contradictions:

1. Henry Johnson, the driver of the defendants' truck, testified that he had stopped on Court Street and picked up some garbage in the scope of his employment, and thereafter his helper—Ivy Ranier—told him that he, Ranier, had permission for Johnson to drive to the Parkway Court to get some chairs for Ranier personally. Johnson said that he was on this mission for Ranier when Mrs. Ransom was struck.

2. Ivy Ranier testified that he was with Henry Johnson, and that they had just returned from the dump and had not stopped to pick up any garbage, when he asked Johnson to drive him to the Parkway Courts to get some chairs; that Johnson did not ask him if he had permission to make such a trip; that he did not have

---

[2] See *Brooks* v. *Bale Chevrolet Co.*, 198 Ark. 17, 127 S. W. 2d 135, in which an instructed verdict for the defendant was affirmed; and see *Fooks* v. *Williams*, 205 Ark. 119, 168 S. W. 2d 193, in which a judgment for plaintiff was reversed and the cause dismissed.

[3] There is an annotation in 95 A. L. R. 876 on "Presumptions of Evidence"; and *Mullins* v. *Ritchie. Grocer Co., supra,* is discussed therein.

such permission; and that the trip to the Parkway Courts was off of the regular route.

3. George Ford (one of the appellants) testified that his company had another truck that picked up garbage at the Parkway Court; that Henry Johnson was on a private mission when he went there; that no permission had been given to Johnson or Ranier to go to the Parkway Court; and that Johnson was three blocks off of his route at the place where Mrs. Ransom was injured.

4. Reuben Ford (another appellant) testified substantially to the same effect as did George Ford.

From the above review, it is readily apparent that there are some contradictions in the testimony of Henry Johnson and Ivy Ranier. But—independent of all other matters—there is a significant contradiction between the testimony of George and Reuben Ford on the one hand, and the testimony of P. G. Ransom for the appellee. This we now discuss: before either George or Reuben Ford testified, P. G. Ransom (husband of the injured woman and, himself, a party to this litigation) had testified that George Ford had come to see P. G. Ransom shortly after Mrs. Ransom was hurt. Here is the testimony of P. G. Ransom:

"Q. Do you know who owns Ford & Son Sanitary Company? A. Yes. George Ford and Reuben, I believe it is. Q. Did either of them come to see you after this accident? A. Yes, they did. Q. Which one? A. That fellow sitting right there (Indicating). Q. What did he have to say about the accident? A. He came up and apologized for it, which I thought was very nice of him, and talked to me about it and told me how sorry he was, and said his driver was a little reckless, and says, 'Papa' —I believe he said Papa—'and myself want to do the right thing about it.' And I said, 'I am glad you do, and when my wife gets better and makes a change for the better or worse, I will come around and give you a chance.'"

396

Neither of the appellants denied this testimony of P. G. Ransom. They did not refer to it or try to explain it. So, it seems, that immediately after Mrs. Ransom was injured, George Ford "wanted to do the right thing;" at that time he said the driver of the truck was "his driver;" and no claim was then made by George Ford that the driver was outside the scope of his employment. This testimony by P. G. Ransom, unexplained as it was by appellants, made a fact question for the jury as to whether the appellants had rebutted the presumption arising from ownership and driving of the vehicle. Even if such legal presumption be considered as a mere rule to disappear when substantial proof be offered by the defendants, still, at the time that the defendants offered their proof, the testimony of P. G. Ransom had made a question for the jury as to scope of employment.

We therefore conclude that there was substantial evidence to have the question of scope of employment submitted to the jury, just as was done. Since this is the only assignment on the appeal, it follows that the judgment must be affirmed.